James E. Magleby (7247)
Jennifer Fraser Parrish (11207)
**MAGLEBY CATAXINOS, PC**
141 West Pierpont Avenue
Salt Lake City, Utah 84101
Tel.: (801) 359-9000
Fax: (801) 359-9011
magleby@mcpc.law
parrish@mcpc.law

Russell B. Cate*
**RILEYCATE, LLC**
11 Municipal Drive, Suite 320
Fishers, Indiana 46038
Tel: (317) 588-2866
Fax: (317) 458-1785
rcate@rileycate.com

Ben Barnow*
Anthony L. Parkhill*
**BARNOW AND ASSOCIATES, P.C.**
205 West Randolph Street, Ste. 1630
Chicago, IL 60606
Tel.: 312.621.2000
Fax: 312.641.5504
b.barnow@barnowlaw.com
aparkhill@barnowlaw.com

*Attorneys for Plaintiff David Hornthal and
the Proposed Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| **DAVID HORNTHAL, on behalf of his minor child S.H. and on behalf of all others similarly situated,**<br><br>**Plaintiff,**<br><br>v.<br><br>**INSTRUCTURE, INC.,**<br><br>**Defendant.** | **PROPOSED CLASS ACTION**<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED**<br><br><br>**Case No. _____** |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff David Hornthal, on behalf of his minor child S.H. ("Plaintiff"), and on behalf of

all others similarly situated (collectively, "Class members"), by and through his attorneys, brings

this Class Action Complaint against Defendant Instructure, Inc. ("Instructure" or "Defendant") and complains and alleges upon personal knowledge as to himself and information and belief as to all other matters.

## INTRODUCTION

1. Plaintiff brings this class action against Instructure for its failure to secure and safeguard the personally identifiable information ("PII") of his minor child and other individuals who use Instructure's Canvas learning management system ("Canvas") from cyberattacks which affected Instructure on or about April 29, 2026 and May 7, 2026.

2. On or about April 29, 2026 and May 7, 2026, Instructure experienced a cybersecurity incident caused by cybercriminal threat actors in which cybercriminals accessed and stole PII belonging to Plaintiff's minor child and other Canvas users, including at least names, usernames, email addresses, course names, enrollment information, and messages (the "Data Breach").

3. Instructure owed a duty to Plaintiff and Class members to implement and maintain reasonable and adequate security measures to secure, protect, and safeguard their PII against unauthorized access and disclosure. Instructure breached that duty by, among other things, failing to implement and maintain reasonable security procedures and practices to protect Class members' PII from unauthorized access and disclosure.

4. As a result of Instructure's inadequate security and breach of its duties and obligations, the Data Breach occurred, and Plaintiff's minor child's and Class members' PII was accessed and disclosed. This action seeks to remedy these failings and their consequences. Plaintiff brings this action on behalf of his minor child and all persons whose PII was exposed as a result of the Data Breach.

5.     Plaintiff, on behalf of his minor child and all other Class members, asserts a claim for negligence, and seeks declaratory relief, injunctive relief, monetary damages, statutory damages, punitive damages, equitable relief, and all other relief authorized by law.

## PARTIES

### *Plaintiff David Hornthal*

6.     Plaintiff David Hornthal and his minor child S.H. are citizens and residents of Illinois.

7.     S.H. uses Instructure's Canvas system through her school. As a condition of using Canvas, Instructure required access to S.H.'s PII.

8.     At all relevant times, Instructure stored and maintained S.H.'s PII on its network systems, including the systems impacted in the Data Breach.

9.     Had Plaintiff known that Instructure does not adequately protect the PII it collects and maintains, he would not have agreed to provide S.H.'s PII to, or allowed S.H. to obtain services from, Instructure.

10.     Upon information and belief, all of S.H.'s PII in Instructure's possession, including her name, usernames, email addresses, course names, enrollment information, and messages were accessed and stolen by cybercriminals in the Data Breach.

11.     As a direct result of the Data Breach, Plaintiff's minor child S.H. has suffered injury and damages including, *inter alia*, a substantial and imminent risk of identity theft; the wrongful disclosure and loss of confidentiality of her highly sensitive PII; time and effort lost attempting to mitigate the harm caused by the Data Breach; and deprivation of the value of her PII.

*Defendant Instructure, Inc.*

12.     Defendant Instructure, Inc. is a Delaware corporation with its principal place of business located at 6330 South 3000 East, Suite 700, Salt Lake City, UT 84121. It may be served through its registered agent: C T Corporation System, 1108 E. South Union Ave., Midvale, UT 84047.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction over this action under 28 U.S.C.§ 1332(d) because this is a class action wherein the amount in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs; there are more than 100 members in the proposed class; and Plaintiff and Defendant are citizens of different states.

14.     This Court has personal jurisdiction over Defendant because Instructure has its principal place of business in this State, transacts business in this State, and contracts to supply goods or services in this State.

15.     Venue is proper in this District because Instructure maintains its headquarters and principal place of business in this District.

## FACTUAL ALLEGATIONS

*Overview of Instructure*

16.     Instructure is an education technology company that develops and publishes Canvas, a web-based learning management system "that allows institutions to manage digital learning, educators to create and present online learning materials and assess student learning, and

4

students to engage in courses and receive feedback about skill development and learning achievement."[1]

17.    Instructure has over 8,000 customers, including 40% of U.S. K–12 districts and tens of millions of users.[2] Canvas is used by 41% of higher education institutions in North America.[3]

18.    In the regular course of its business, Instructure collects and maintains the PII of educators, students, and other Canvas users.

19.    Instructure claims that trust is "the bedrock upon which we build meaningful relationships with our customers and users."[4] It also promises that it "build[s] security into the fabric of our cloud platform, infrastructure, and processes, so you can rest assured your data is safeguarded."[5]

20.    Instructure states it has "implemented a robust enterprise information security program" that is "based on Information Security Standards."[6] It represents it maintains "a Network Security Policy and an IT Acceptable Use Policy which outline procedures, processes and policies for all endpoints on both production and corporate networks" and are "evaluated against both SOC

---

[1]    *What is Canvas?*, INSTRUCTURE    (Apr.    21,    2026), https://community.instructure.com/en/kb/articles/662716-what-is-canvas.

[2] *Why Instructure*, INSTRUCTURE, https://www.instructure.com/why-instructure (last accessed May 11, 2026).

[3] Megan Divers, *Hackers breach Canvas learning platform, exposing data on millions of students and teachers*, WCNC (May 8, 2026 12:05 AM), https://www.wcnc.com/article/news/nation-world/canvas-hack-shinyhunters-schools-students-teachers-data-exposed/507-0f3f5973-3d68-45af-b309-666561b2bd87?ref=404media.co.

[4] *Instructure Trust Center*, INSTRUCTURE, https://www.instructure.com/trust-center (last accessed May 11, 2026).

[5] *Id.*

[6] *Security*, INSTRUCTURE, https://www.instructure.com/trust-center/security (last accessed May 11, 2026).

2 and ISO 27001 standards."[7] Instructure also claims that data is encrypted in-transit and in storage.[8]

21.    As a result of the Data Breach, many colleges and universities across the country postponed final exams as Canvas went offline.[9] Following the Data Breach, Instructure's CEO, Steve Daly, acknowledged "Over the past few days, many of you dealt with real disruption. Stress on your teams. Missed moments in the classroom. Questions you couldn't get answered."[10]

22.    Plaintiff's minor child and Class members are current or former Canvas users who entrusted Instructure with their PII.

### The Data Breach

23.    On April 29, 2026, Instructure detected unauthorized activity in Canvas.[11] Instructure identified additional unauthorized activity tied to the same incident on May 7, 2026.[12] Instructure "confirmed that the unauthorized actor carried out this activity by exploiting an issue related to our Free-For-Teacher accounts."[13]

24.    While Instructure's investigation remains ongoing, Instructure has confirmed that the compromised information included at least "information like usernames, email addresses, course names, enrollment information and messages."[14]

25.    The notorious cybercriminal group known as "ShinyHunters" claimed responsibility

---

[7] *Id.*
[8] *Id.*
[9] Ryan Quinn, *Universities Suspend Final Exams After Canvas Hack*, INSIDE HIGHER ED (May 8, 2026), https://www.insidehighered.com/news/tech-innovation/teaching-learning/2026/05/08/universities-suspend-final-exams-after-canvas.
[10] *Security Incident Update & FAQs*, INSTRUCTURE, https://www.instructure.com/incident_update (last accessed May 11, 2026).
[11] *Id.*
[12] *Id.*
[13] *Id.*
[14] *Id.*

for the Data Breach.[15] ShinyHunters claims to have stolen over 3.65 terabytes of data, including 275 million records tied to students, teachers, and staff at 8,809 school districts, universities and online education platforms.[16]

26.     ShinyHunters is "a notorious black-hat cybercriminal group" that specializes in "large-scale data breaches, extortion, and selling stolen user data on the dark web."[17]

27.     After breaching Instructure's systems, the ShinyHunters group caused a ransom note to appear in users' Canvas accounts in which ShinyHunters threatened to release the information stolen in the Data Breach if they were not paid a ransom.[18]

---

[15] Heather Hollingsworth, *Cyberattack hits Canvas system used by thousands of schools as finals loom*, AP NEWS (May 7, 2026 10:19 PM), https://apnews.com/article/cyberattack-schools-canvas-instructure-shinyhunters-a0d7719689263e6b5f90d0e633391b5b.

[16] Divers, *supra* note 3.

[17] Melissa Garcia, *ShinyHunters: Inside the Hacker Group Targeting Your SaaS Data (And How to Stop Them)*, DO CONTROL (May 4, 2026), https://www.docontrol.io/blog/shinyhunters.

[18] Brandon Drenon & Joe Tidy, *International cyber attack disrupts swathe of universities and schools*, BBC (May 8, 2026), https://www.bbc.com/news/articles/ce3pq0136eqo.



28.     After committing a data breach, ShinyHunters' *modus operandi* is to publish or sell the stolen information to other cybercriminals on the dark web.[19]

29.     Despite discovering the Data Breach as early as April 29, 2026, Instructure has yet to inform Plaintiff or Class members of what PII was compromised in the Data Breach. Defendant's failure to promptly notify Plaintiff and Class members that their PII was accessed, disclosed, and stolen virtually ensures that the unauthorized third parties who exploited those security lapses could monetize, misuse, or disseminate that PII before Plaintiff and Class members could take affirmative steps to protect their sensitive information. As a result, Plaintiff and Class members

---

[19] *See, e.g.*, Catalin Cimpanu, *A hacker group is selling more than 73 million user records on the dark web*, ZD NET (May 9, 2020 7:10 AM), https://www.zdnet.com/article/a-hacker-group-is-selling-more-than-73-million-user-records-on-the-dark-web/; Garcia, *supra* note 17.

8

will suffer indefinitely from the substantial and concrete risk that their identities will be (or already have been) stolen and misappropriated.

***Defendant Knew that Criminals Target PII***

30.     At all relevant times, Defendant knew, or should have known, that the PII that it collects and stores was a target for malicious actors. Despite such knowledge, Defendant failed to implement and maintain reasonable and appropriate data privacy and security measures to protect Plaintiff's and Class members' PII from unauthorized disclosures and cyberattacks that it should have anticipated and guarded against.

31.     It is well known among companies that store sensitive personally identifiable information that such information—such as the PII stolen in the Data Breach—is valuable and frequently targeted by criminals. In a recent article, *Business Insider* noted that "[d]ata breaches are on the rise for all kinds of businesses, including retailers . . . . Many of them were caused by flaws in . . . systems either online or in stores."[20]

32.     PII is a valuable property right.[21] The value of PII as a commodity is measurable.[22] "Firms are now able to attain significant market valuations by employing business models predicated on the successful use of personal data within the existing legal and regulatory frameworks."[23] American companies are estimated to have spent over $19 billion on acquiring

---

[20] Dennis Green, Mary Hanbury & Aine Cain, *If you bought anything from these 19 companies recently, your data may have been stolen*, BUS. INSIDER (Nov. 19, 2019, 8:05 AM), https://www.businessinsider.com/data-breaches-retailers-consumer-companies-2019-1.

[21] *See* Marc van Lieshout, *The Value of Personal Data*, 457 Int'l Fed'n for Info. Processing 26 (May 2015) ("The value of [personal] information is well understood by marketers who try to collect as much data about personal conducts and preferences as possible . . ."), https://www.researchgate.net/publication/283668023_The_Value_of_Personal_Data.

[22] *See* Robert Lowes, *Stolen EHR [Electronic Health Record] Charts Sell for $50 Each on Black Market*, MEDSCAPE (April 28, 2014), http://www.medscape.com/viewarticle/824192.

[23] Organization for Economic Co-operation and Development, *Exploring the Economics of*

personal data of consumers in 2018.[24] It is so valuable to identity thieves that once PII has been disclosed, criminals often trade it on the "cyber black-market," or the "dark web," for many years.

33.     Criminals piece together bits and pieces of compromised PII for profit by creating "Fullz" packages. "Fullz" is fraudster speak for data that includes the information of the victim, including, but not limited to, the name, address, credit card information, social security number, date of birth, and more.

34.     With "Fullz" packages, cyber-criminals can cross-reference two sources of PII to marry unregulated data available elsewhere to criminally stolen data with an astonishingly complete scope and degree of accuracy in order to assemble complete dossiers on individuals.

35.     The development of "Fullz" packages means that the stolen PII from the Data Breach can easily be used to link and identify it to Plaintiff's and Class members' phone numbers, email addresses, and other unregulated sources and identifiers. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII that was exfiltrated in the Data Breach, criminals may still easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

36.     Thus, even if certain information (such as contact information) was not stolen in a data breach, criminals can still easily create a comprehensive "Fullz" package. Then, this comprehensive dossier can be sold—and then resold in perpetuity—to criminals.

---

*Personal Data: A Survey of Methodologies for Measuring Monetary Value*, OECD ILIBRARY (Apr. 2, 2013), https://www.oecd-ilibrary.org/science-and-technology/exploring-the-economics-of-personal-data_5k486qtxldmq-en.
[24] IAB Data Center of Excellence, *U.S. Firms to Spend Nearly $19.2 Billion on Third-Party Audience Data and Data-Use Solutions in 2018, Up 17.5% from 2017*, INTERACTIVE ADVERT. BUREAU (Dec. 5, 2018), https://www.iab.com/news/2018-state-of-data-report/.

37.     Consumers place a high value on the privacy of their data, as they should. Researchers shed light on how much consumers value their data privacy—and the amount is considerable. Indeed, studies confirm that "when privacy information is made more salient and accessible, some consumers are willing to pay a premium to purchase from privacy protective websites."[25]

38.     Given these facts, any company that transacts business with a consumer and then compromises the privacy of consumers' PII has thus deprived that consumer of the full monetary value of the consumer's transaction with the company.

***Theft of PII Has Grave and Lasting Consequences for Victims***

39.     The nature of the data stolen in the Data Breach increases victims' risk of future identity theft. Students use Canvas "to disclose medical and mental health information to academic advisers, to request accommodations and to communicate with Title IX advocates."[26]

40.     After a breach of this nature, "students remain a prime target for scammers who may use the information obtained in the breach to launch phishing attacks or other fraudulent schemes."[27] The data stolen in the Data Breach "provides threat actors enough personal context to conduct targeted phishing campaigns against staff, students, and parents alike. Leaked records can

---

[25] Janice Y. Tsai et al., *The Effect of Online Privacy Information on Purchasing Behavior*, *An Experimental Study*, 22(2) INFO. SYS. RSCH. 254 (June 2011) https://www.jstor.org/stable/23015560?seq=1.

[26] Divers, *supra* note 3.

[27] Tre Ward, *Data breach affects schools using Canvas; University of Illinois postpones final exams, assignments*, ABC7 CHI. (May 8, 2026 8:48 AM), https://abc7chicago.com/post/canvas-hacked-data-breach-affects-schools-nationwide-including-university-illinois-isu/19060406/.

be used to impersonate school administrators, IT support, or financial aid offices in follow-on attacks."[28] This data is thus highly valuable for targeted phishing and social-engineering attacks.[29]

41.     Victims could be targeted not just in the immediate wake of the Data Breach, but for years into the future.[30] The biggest risk after this type of breach is not immediate identity theft, but scams that surface weeks or months later and appear legitimate.[31]

42.     Experian, one of the largest credit reporting companies in the world, warns consumers that "[i]dentity thieves can profit off your personal information" by, among other things, selling the information, taking over accounts, using accounts without permission, applying for new accounts, obtaining medical procedures, filing a tax return, and applying for government benefits.[32]

43.     Identity theft is not an easy problem to solve. In a 2025 survey, the Identity Theft Resource Center found that 20% of victims of identity misuse needed more than 30 days to resolve issues stemming from identity theft and 13% required three months or more.[33]

---

[28] *Education Sector in the Crosshairs: ShinyHunters' Extortion Campaign Against Instructure*, HALYCON (May 8, 2026), https://www.halcyon.ai/ransomware-alerts/education-sector-in-the-crosshairs-shinyhunters-extortion-campaign-against-instructure.

[29] David DiMolfetta, *Canvas breach spotlights cybercriminal appetite for student data*, NEXT GOV. (May 11, 2026), https://www.nextgov.com/cybersecurity/2026/05/canvas-breach-spotlights-cybercriminal-appetite-student-data/413451/.

[30] Hannah Park, *et al.*, *What we know about the Canvas hack that has impacted thousands of schools*, CNN (May 8, 2026), https://www.cnn.com/2026/05/07/us/canvas-hack-strands-college-students-finals-week.

[31] DiMolfetta, *supra* note 29.

[32] *See* Louis DeNicola, *What Can Identity Thieves Do with Your Personal Information and How Can You Protect Yourself*, EXPERIAN (May 21, 2023), https://www.experian.com/blogs/ask-experian/what-can-identity-thieves-do-with-your-personal-information-and-how-can-you-protect-yourself/.

[33] Identity Theft Resource Center, *2025 Consumer Impact Report*, IDENTITY THEFT RES. CTR. (2025), https://www.idtheftcenter.org/publication/itrc-2025-consumer-impact-report/ (last accessed May 11, 2026).

44. There may also be time lags between when sensitive personal information is stolen, when it is used, and when a person discovers it has been used. On average it takes approximately three months for consumers to discover their identity has been stolen and used, but it takes some individuals up to three years to learn that information.[34]

45. It is within this context that Plaintiff and all other Class members must now live with the knowledge that their PII is forever in cyberspace and was taken by criminals intending to use that information for any number of improper purposes and scams, including making the information available for sale on the black-market.

*Damages Sustained by Plaintiff and Class Members*

46. Plaintiff and Class members have suffered and will suffer injury, including, but not limited to: (i) a substantially increased and imminent risk of identity theft; (ii) the disclosure, compromise, and theft of their PII; (iii) out-of-pocket expenses associated with the prevention, detection, and recovery from unauthorized use of their PII; (iv) lost opportunity costs associated with efforts attempting to mitigate the actual and future consequences of the Data Breach; (v) the continued risk to their PII which remains in Defendant's possession; and (vi) future costs in terms of time, effort, and money that will be required to prevent, detect, and repair the impact of the PII compromised as a result of the Data Breach.

## CLASS ALLEGATIONS

47. This action is brought and may be properly maintained as a class action pursuant to Fed. R. Civ. P. 23.

48. Plaintiff brings this class action on behalf of his minor child S.H. and all members

---

[34] John W. Coffey, *Difficulties in Determining Data Breach Impacts*, 17 J. OF SYSTEMICS, CYBERNETICS AND INFORMATICS 9 (2019), http://www.iiisci.org/journal/pdv/sci/pdfs/IP069LL19.pdf.

of the following Class of similarly situated persons:

> All persons residing in the United States whose PII was compromised in the Data Breach, including all who were sent notice of the Data Breach.

49. Excluded from the Class are Instructure, Inc. and its affiliates, parents, subsidiaries, officers, agents, and directors, as well as the judge(s) presiding over this matter and the clerks of said judge(s).

50. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of his claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

51. The members in the Class are so numerous that joinder of all Class members in a single proceeding would be impracticable. While Instructure has yet to confirm the number of victims, ShinyHunters claim to have stolen information regarding 231 million people.[35]

52. Common questions of law and fact exist as to all Class members and predominate over any potential questions affecting only individual Class members. Such common questions of law or fact include, *inter alia*:

    a. Whether Defendant had a duty to implement and maintain reasonable security procedures and practices to protect and secure Plaintiff's and Class members' PII from unauthorized access and disclosure;

    b. Whether Defendant had a duty not to disclose the PII of Plaintiff and Class members to unauthorized third parties;

    c. Whether Defendant failed to exercise reasonable care to secure and safeguard Plaintiff's and Class members' PII;

---

[35] Lorenzo Franceschi-Bicchierai & Zack Whittaker, *Hackers deface school login pages after claiming another Instructure hack*, TECHCRUNCH (May 7, 2026 1:59 PM), https://techcrunch.com/2026/05/07/hackers-deface-school-login-pages-after-claiming-another-instructure-hack/.

d.  Whether Defendant breached those duties to protect Plaintiff's and Class members' PII; and

e.  Whether Plaintiff and Class members are entitled to damages and the measure of such damages and relief.

53.  Instructure engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff on behalf of his minor child S.H. and all other Class members. Individual questions, if any, pale in comparison, in both quantity and quality, to the numerous common questions that dominate this action.

54.  Plaintiff's claims are typical of the claims of the Class. Plaintiff's minor child, like all proposed members of the Class, had her PII compromised in the Data Breach. Plaintiff and Class members were injured by the same wrongful acts, practices, and omissions committed by Defendant, as described herein. Plaintiff's claims therefore arise from the same practices or course of conduct that give rise to the claims of all Class members.

55.  Plaintiff will fairly and adequately protect the interests of the Class members. Plaintiff is an adequate representative of the Class in that he has no interests adverse to, or that conflict with, the Class he seeks to represent. Plaintiff has retained counsel with substantial experience and success in the prosecution of complex consumer protection class actions of this nature.

56.  A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other financial detriment suffered by Plaintiff and all other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Instructure, so it would be impracticable for Class members to individually seek redress from Instructure's wrongful conduct. Even if Class

members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

57.　Plaintiff realleges and incorporates by reference all preceding paragraphs as if fully set forth herein.

58.　Instructure owed a duty to Plaintiff and all other Class members to exercise reasonable care in safeguarding and protecting their PII in its possession, custody, or control.

59.　Instructure knew, or should have known, the risks of collecting and storing Plaintiff's and all other Class members' PII and the importance of maintaining secure systems and using encryption. Instructure knew, or should have known, of the many data breaches that targeted corporate entities in recent years.

60.　Given the nature of Instructure's business, the sensitivity and value of the PII it maintains, and the resources at its disposal, it should have identified the vulnerabilities to its systems and prevented the Data Breach from occurring.

61.　Instructure's duties arise from, *inter alia*, Section 5 of the FTC Act ("FTCA"), 15 U.S.C. § 45(a)(1), which prohibits "unfair . . . practices in or affecting commerce," including, as interpreted by the FTC, the unfair act or practice by business, such as Instructure, of failing to employ reasonable measures to protect and secure PII.

16

62.     Instructure breached these duties and Section 5 of the FTCA by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect PII entrusted to it—including Plaintiff's and Class members' PII.

63.     Plaintiff and Class members are within the class of persons that Section 5 of the FTCA were intended to protect.

64.     The harm occurring as a result of the Data Breach is the type of harm that Section 5 of the FTCA were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures and avoid unfair practices or deceptive practices, caused the same type of harm that has been suffered by Plaintiff and Class members as a result of the Data Breach.

65.     It was reasonably foreseeable to Instructure that its failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class members' PII by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate data security processes, controls, policies, procedures, protocols, and software and hardware systems would result in the unauthorized release, disclosure, and dissemination of Plaintiff's and Class members' PII to unauthorized individuals.

66.     But for Instructure's negligent conduct or breach of the above-described duties owed to Plaintiff and Class members, their PII would not have been compromised.

67.     As a result of Instructure's above-described wrongful actions, inaction, and want of ordinary care that directly and proximately caused the Data Breach, Plaintiff and all other Class members have suffered, and will continue to suffer, economic damages and other injury and actual

17

harm in the form of, *inter alia*: (i) a substantially increased risk of identity theft and fraud—risks justifying expenditures for protective and remedial services for which they are entitled to compensation; (ii) improper disclosure of their PII; (iii) breach of the confidentiality of their PII; (iv) deprivation of the value of their PII, for which there is a well-established national and international market; and (v) lost time and money incurred to mitigate and remediate the effects of the Data Breach, including the increased risks of identity theft they face and will continue to face.

## **PRAYER FOR RELIEF**

Plaintiff, on behalf of his minor child S.H. and on behalf of all other members of the Class, respectfully requests that the Court enter judgment in his favor and against Instructure as follows:

A.      Certifying the Class as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's counsel as Class Counsel;

B.      Awarding Plaintiff and the Class appropriate monetary relief, including actual damages, statutory damages, punitive damages, restitution, and disgorgement;

C.      Awarding Plaintiff and the Class equitable, injunctive, and declaratory relief, as may be appropriate. Plaintiff, on behalf of his minor child and the Class, seeks appropriate injunctive relief designed to prevent Instructure from experiencing another data breach by adopting and implementing best data security practices to safeguard PII and to provide or extend credit monitoring and similar services to protect against all types of identity theft;

D.      Awarding Plaintiff and the Class pre-judgment and post-judgment interest to the maximum extent allowable;

E.      Awarding Plaintiff and the Class reasonable attorneys' fees, costs, and expenses, as allowable; and

F.       Awarding Plaintiff and the Class such other favorable relief as allowable under law.

## JURY TRIAL DEMANDED

Plaintiff demands a trial by jury of all claims in this Class Action Complaint so triable.


Dated: May 12, 2026                          Respectfully submitted,

                                             /s/ James E. Magleby
                                             James E. Magleby (7247)
                                             Jennifer Fraser Parrish (11207)
                                             **MAGLEBY CATAXINOS, PC**
                                             141 West Pierpont Avenue
                                             Salt Lake City, Utah 84101
                                             Tel.: (801) 359-9000
                                             Fax: (801) 359-9011
                                             magleby@mcpc.law
                                             parrish@mcpc.law

                                             Ben Barnow*
                                             Anthony L. Parkhill*
                                             **BARNOW AND ASSOCIATES, P.C.**
                                             205 West Randolph Street, Ste. 1630
                                             Chicago, IL 60606
                                             Tel.: 312.621.2000
                                             Fax: 312.641.5504
                                             b.barnow@barnowlaw.com
                                             aparkhill@barnowlaw.com

                                             Russell B. Cate*
                                             **RILEYCATE, LLC**
                                             11 Municipal Drive, Suite 320
                                             Fishers, Indiana 46038
                                             Tel: (317) 588-2866
                                             Fax: (317) 458-1785
                                             rcate@rileycate.com


                                             *Attorneys for Plaintiff David Hornthal*

                                             **pro hac vice* to be submitted


19